**No. 25-30648**

———————————————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————————————————

**PATRICK BREAUX**
*Plaintiff - Appellee*

**v.**

**ALLIANCE LIFTBOATS, LLC**
*Defendant - Appellant*

———————————————————————————

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA,
HON. SUSIE MORGAN, CIVIL ACTION 2:24-CV-01000**

———————————————————————————

**OPPOSITION IN RESPONSE TO
PLAINTIFF-APPELLANT'S MOTION
TO DISMISS APPEAL FOR LACK OF JURISDICTION**

———————————————————————————

David M. Korn (Bar #21676)
Stephanie M. Poucher (Bar #37263)
Brendan J. Besh (Bar #40280)
**PHELPS DUNBAR LLP**
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: kornd@phelps.com
stephanie.poucher@phelps.com
brendan.besh@phelps.com

*ATTORNEYS FOR DEFENDANT-
APPELLANT, ALLIANCE LIFTBOATS, LLC*

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that, pursuant to 5TH CIR. R. 28.2.1, the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    Patrick Breaux, plaintiff-appellee

2.    Counsel for plaintiff-appellee:
      Harry E. Morse
      Martin S. Bohman
      BOHMAN MORSE, LLC
      400 Poydras St., Suite 2050
      New Orleans, LA 70130

      Cayce C. Peterson
      Jeffrey P. Green
      JJC LAW LLC
      111 Veterans Memorial Blvd.
      Heritage Plaza, Suite 810
      Metairie, LA 70005

      Thomas M. Flanagan
      Anders F. Holmgren
      FLANAGAN PARTNERS LLP
      201 St. Charles Ave., Ste. 3300
      New Orleans, LA 70170

3.    Alliance Liftboats, LLC, defendant-appellant

4.    Helix Energy Solutions Group, Inc.

5.    Counsel for defendant-appellant:

      David M. Korn
      Stephanie M. Poucher

i

Brendan J. Besh
PHELPS DUNBAR LLP
365 Canal St., Suite 2000
New Orleans, LA 70130

SO CERTIFIED, this the 4th day of December, 2025

Respectfully submitted,

BY: _____
Stephanie M. Poucher

**ATTORNEYS FOR DEFENDANT-
APPELLANT, ALLIANCE LIFTBOATS, LLC**

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ..................................................... i

TABLE OF AUTHORITIES ................................................................. iv

I.      INTRODUCTION ................................................................. 1

I.      BACKGROUND ................................................................. 3

II.     ARGUMENT ................................................................... 7

        A.      The Court Has Appellate Jurisdiction ........................... 7

                1.      Collective Actions under Section 216(b) of the
                        FLSA ................................................. 10

                2.      Collective Action Certification Determines the
                        Parties' Rights ..................................... 15

                3.      Collective Action Certification Determines the
                        Parties' Liabilities ................................ 18

III.    CONCLUSION ................................................................. 25

CERTIFICATE OF SERVICE ............................................................ 27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
        LIMITATION, TYPEFACE REQUIREMENTS AND TYPE
        STYLE REQUIREMENTS ................................................. 28

PD.56438020.4

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. All Coast, L.L.C.*,
  15 F.4th 365 (5th Cir. 2021) ...................................................................5

*Allen v. Okam Holdings, Inc.*,
  116 F.3d 153 (5th Cir. 1997) ..................................................................8

*Bigger v. Facebook, Inc.*,
  947 F.3d 1043 (7th Cir. 2020) ..............................................................14

*Campbell v. City of Los Angeles*,
  903 F.3d 1090 (9th Cir. 2018) ..............................................................17

*Carman Tool & Abrasives, Inc. v. Evergreen Lines*,
  871 F.2d 897 (9th Cir. 1989) ..................................................................9

*Chem One, Ltd. v. M/V RICKMERS GENOA*,
  660 F.3d 626 (2d Cir. 2011) ...................................................................9

*Clark v. A&L Homecare and Training Ctr.*,
  LLC, 68 F.4th 1003 (6th Cir. 2023)...............................................13, 14

*Clay v. Huntington Ingalls, Inc.*,
  No. 09-7265, 2012 WL 860375 (E.D. La. Mar. 13, 2012)...................11

*Coder v. M-I, LLC*,
  No. 17-15074, 2019 WL 5425437 (E.D. La. Oct. 23, 2019)...............11

*Coffin v. Blessey Marine Services, Inc.*,
  771 F.3d 276 (5th Cir. 2014) ................................................................18

*In re Complaint of Ingram Barge Co.*,
  517 F.3d 246 (5th Cir. 2008) ..........................................................21, 22

*Diamond Servs. Corp. v. RLB Contracting, Inc.*,
  113 F.4th 430 (5th Cir. 2024) .............................................................7, 8

*Ehart v. Lahaina Divers, Inc.*,
    92 F.4th 844 (9th Cir. 2024) (Bea, J.)................................................................23

*United States v. Ernst Jacob GmbH & Co. KG*,
    158 F.4th 232 (1st Cir. 2025)..................................................................9, 23

*Francis on Behalf of Francis v. Forest Oil Corp.*,
    798 F.2d 147 (5th Cir. 1986) ..................................................................22

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013)....................................................................10, 14

*Gomez v. Glob. Precision Sys.*,
    636 F. Supp. 3d 746 (W.D. Tex. 2022) ..........................................................13, 14

*Hamm v. Acadia Healthcare Co., Inc.*,
    748 F.Supp.3d 404 (E.D. La. 2024)..........................................................18, 24

*Johnson v. Big Lots Stores, Inc.*,
    561 F. Supp. 2d 567 (E.D. La. 2008)....................................................................12

*Kingstate Oil v. M/V Green Star*,
    815 F.2d 918 (3d Cir. 1987) ..................................................................9

*Loy v. Rehab Synergies, L.L.C.*,
    71 F.4th 329 (5th Cir. 2023) ..................................................................12, 13

*Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel*,
    833 F.2d 1059 (1st Cir. 1987)..................................................................9

*McGlathery v. Lincare*,
    No. 13-1255, 2014 WL 1338610 (M.D. Fla. Apr. 3, 2014) ................................11

*Monroe v. FTS USA, LLC*,
    860 F.3d 389 (6th Cir. 2017) ..................................................................15

*Mooney v. Aramco Servs. Co.*,
    54 F.3d 1207 (5th Cir. 1995) ..................................................................11

*O'Donnell v. Latham*,
    525 F.2d 650 (5th Cir. 1976) ..................................................................9

*Odem v. Centex Homes*,
    No. 08-1196, 2010 WL 424216 (N.D. Tex. Feb. 4, 2010) ................................11

*Quijano v. Tuffy Associates Corp.*,
    No. 13-573, 2014 WL 4182691 (M.D. Fla. Aug. 21, 2014)..............................11

*Republic of France v. United States*,
    290 F.2d 395 (5th Cir. 1961) .............................................................................21

*Richard v. Eli Lilly & Co.*,
    149 F.4th 901 ....................................................................................................14

*Rindfleisch v. Gentiva Health Services, Inc.*,
    22 F.Supp.3d 1295 (N.D. Ga. 2014)..................................................................18

*SCF Waxler Marine, L.L.C. v. ARIS T M/V*,
    902 F.3d 461 (5th Cir. 2018), (Oct. 30, 2018)......................................19, 20, 21

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d Cir. 2020) ..............................................................................15

*Swales v. KLLM Transport Services, L.L.C.*,
    985 F.3d 430 (5th Cir. 2021) ......................................................................*passim*

*Thiessen v. Gen. Electric Cap. Corp.*,
    267 F.3d 1095 (10th Cir. 2001) .........................................................................12

*Vision Air Flight Serv., Inc. v. M/V Nat'l Pride*,
    155 F.3d 1165 (9th Cir. 1998) .............................................................................9

*Walling v. W.D. Haden Co.*,
    153 F.2d 196 (5th Cir. 1946) .........................................................................5, 18

*Wallis v. Princess Cruises, Inc.*,
    306 F.3d 827 (9th Cir. 2002) ...............................................................................9

*Willoughby v. Youth Villages, Inc.*,
    113 F. Supp. 3d 1265 (N.D. Ga. 2015)..............................................................23

*Zuliani v. Santa Ana, LLC*,
    No. 17-62080, 2018 WL 3730889 (S.D. Fl. May 25, 2018) ..............................12

**Federal Statutes**

29 U.S.C.A. § 216 ......................................................................................*passim*

28 U.S.C. § 1292(a)(3) ...............................................................................*passim*

29 U.S.C. § 255(a) .............................................................................................10

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ............................................................15

MERRIAM-WEBSTER DICTIONARY (accessed November 24, 2025) ...........................9

Federal Rule of Appellate Procedure 32 .............................................................28

Federal Rule of Civil Procedure 23 ...........................................................*passim*

## OPPOSITION TO PLAINTIFF-APPELLEE'S
## MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION

Defendant-Appellant, Alliance Liftboats, LLC ("Alliance"), respectfully submits this Opposition in Response to Plaintiff-Appellee Patrick Breaux's Motion to Dismiss Appeal for Lack of Jurisdiction. Because in this case Plaintiff-Appellee Patrick Breaux ("Breaux") not only filed suit against Alliance under the FLSA but also sued the L/B MIAMI, the vessel upon which he worked, *in rem* and because the district court's order certifying a Fair Labor Standards Act ("FLSA") collective action affects the rights and liabilities of the parties, the challenged order is immediately appealable under 28 U.S.C. § 1292(a)(3). As a result, the Motion to Dismiss Appeal should be denied.

## I.    <u>INTRODUCTION</u>

A court order certifying a collective action against an employer is one that "determines" rights in an FLSA case. Indeed, establishing the rights of non-parties is the entire purpose of obtaining such an order in the first place—certifying a collective action conclusively vests similarly situated, non-party employees with the right to join the named plaintiff in his action against their employer.

Plaintiff-Appellee muddles this analysis by describing the order granting certification as a purely procedural one that merely decides "how and where" liability will be determined. Not so. The challenged order underlying the instant appeal goes far beyond simply the "how and where" of liability. At its core, and

dispositive to the instant dispute, the certification order determined "*who*" had the right to participate in this matter by making the substantive factual finding of which class of employees were similarly situated to the litigation's sole named Plaintiff.

Indeed, the challenged order drastically expands the scope of Alliance's liability, opening the floodgates to hundreds of new parties premised on the district court's conclusion that *every* single employee aboard *any* of Alliance's liftboats, from the vessel's captain to its deckhands, are "similarly situated" to a single cook aboard the L/B MIAMI. Thus, absent an appeal, Alliance will not be able to challenge the district court's threshold liability finding that an employee who cooks meals, like Breaux, performs work that is sufficiently similar to the employee who is responsible for the safe operation and navigation of the entire vessel. Put differently, the district court's ruling serves as *res judicata* to the issue of whether each class of employee is "similarly situated" for the purposes of determining liability under the FLSA, a conclusion that otherwise cannot be traversed until a final judgment is entered in this case.

While Alliance, of course, asserts that this extraordinarily overbroad collective class was improperly certified, Breaux's position that the district court's certification order purely procedural such that it somehow does not determine any of the parties' rights or liabilities presents a much too narrow view of the consequences a collective action certification has on FLSA litigation.

Whether appellate jurisdiction exists here requires solely an examination of whether the challenged interlocutory ruling "determine[es] the rights and liabilities of the parties."[1] The district court's ruling, which creates and extends rights while likewise making substantive factual findings, clearly meets that criterion. For these reasons and those more fully explained below, the Motion to Dismiss the Appeal should be denied.

## I.    <u>BACKGROUND</u>

Alliance provides services which include, *inter alia*, offshore oil field decommissioning and reclamation, project management, engineering solutions, intervention, maintenance, repair, heavy lift, and commercial diving services.[2] Alliance uses various vessels to fulfill its services, including crew boats, supply boats, dive boats, and liftboats.[3] Aside from deckhands, all Alliance employees who work on Alliance vessels, including its various liftboats, are U.S. Coast Guard licensed mariners who serve as masters, mates, engineers, qualified members of the engineering department, oilers, OS, and/or ABs.[4]

Patrick Breaux, a cook who worked on various types of vessels in the Alliance fleet, including a single liftboat, sued Alliance and the L/B MIAMI *in rem* in the

---

[1] 28 U.S.C. § 1292(a)(3).

[2] May 27, 2025 Declaration of Jared Chiasson, attached hereto as **Exhibit 1** (E.D. La. ECF No. 20-3), at ¶ 3.

[3] **Exhibit 1** (E.D. La. ECF No. 20-3), at ¶ 15.

[4] **Exhibit 1** (E.D. La. ECF No. 20-3), at ¶ 7.

U.S. District Court for the Eastern District of Louisiana alleging he was misclassified as an FLSA seaman exempt from overtime pay. He brought claims on behalf of himself and allegedly similarly situated liftboat crew members whom Breaux contends were not paid overtime.[5] In its Answer to Breaux's claims, in addition to generally denying Breaux's allegations, Alliance asserted various affirmative defenses, including its affirmative defense that Breaux was not similarly situated to those he sought to represent, such that a collective action could not be maintained.[6]

Following a status conference, the district court ordered pre-certification class discovery consistent with this Court's ruling in *Swales v. KLLM Transport Services, L.L.C.*[7] At the close of preliminary discovery, and even though Breaux himself *did* receive overtime pay, Breaux moved the district court to certify this case as a collective action consisting of *all* employees aboard *every* Alliance liftboat who were paid a day rate with *no* overtime pay.[8] Despite this Court's unequivocal holding

---

[5] Initially, Breaux sought to certify a class of cooks and crane operators. Only later did Breaux expand his request to include *every* liftboat employee.

[6] *See* **Exhibit 2** (E.D. La. ECF No. 7), at "Third Affirmative Defense."

[7] 985 F.3d 430 (5th Cir. 2021) ("[A] district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible. In other words, the district court, not the standards from *Lusardi*, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs."); *see also* **Exhibit 3** (E.D. La. ECF No.13) (Order Granting Preliminary Discovery).

[8] Alliance maintains that, notwithstanding Breaux's receipt of overtime wages, its decision to do so in no way waives Alliance's position that Breaux was a seaman for purposes of the FLSA's overtime exemption.

in *Adams v. All Coast, L.L.C.* explaining that an employee's FLSA seaman status depends not on *where* the liftboat is but on *what* that employee is doing while aboard the liftboat, including when it is jacked-up,[9] and this Court's instruction in *Swales* for district courts to "rigorously scrutinize the realm of 'similarly situated' workers" before certifying a class,[10] Breaux rested his request for class certification *exclusively* on an analysis of the average time the L/B MIAMI, a single vessel in Alliance's multi-vessel fleet, spent jacked-up over the course of a two-year period. The lack of evidence as to what any employee, including Breaux himself, actually did while aboard a liftboat notwithstanding, the district court found that every Alliance employee aboard every liftboat was "similarly situated" to Breaux's status as a cook on a single liftboat, thereby granting Breaux's motion to certify his requested class without modification or limitation.[11]

---

[9] *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 375 (5th Cir. 2021) (explaining that to determine FLSA seaman status, courts must "look to what the employees do, and not [] on a mere matter of a name, or the place of their work"); *see also Walling v. W.D. Haden Co.*, 153 F.2d 196, 199 (5th Cir. 1946) (explaining that exempt status depends on what the employees "actually do").

Indeed, in *Adams*, this Court further detailed, the plaintiffs, including the crane operators, were undoubtedly engaged in seaman work when they "stood lookout, checked the engine room, attached lifting devices to cables, spliced rope, cleaned and painted, steered the boat, and performed other traditional maritime duties related to navigation and upkeep," including when the vessel was jacked-up. *Adams*, 15 F.4th at 371 & n.3; *id.* at 370 (explaining that the seaman exemption depends on "'the character of the work' the plaintiffs did, 'not on what it is called or the place where it is performed'").

[10] *Swales*, 985 F.3d at 434 ("[A] district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.' Only then can the district court determine whether the requested opt-in notice will go to those who are ***actually similar to the named plaintiffs***." (emphasis added)).

[11] *See* **Exhibit 4** (E.D. La. ECF No. 38).

Specifically, the district court conferred the right to join Breaux's lawsuit to those falling within the following class definition:

> All individuals employed by Alliance Liftboats, LLC and/or Helix Energy Solutions [*which is not and never has been a party to this lawsuit*] as crewmembers of the following vessels: L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DALLAS for the [to be determined time period] who performed a substantial amount of non-seaman work, yet were misclassified as exempt from overtime.[12]

The class definition's imprecision in including both a non-party and legal conclusions on yet to be resolved disputes notwithstanding, the district court's order made clear that this now-certified class included every employee on any liftboat who was paid a day rate.[13]

The district court issued its collective action order in contravention of this Court's directly applicable precedent and the plain text of 29 U.S.C.A. § 216(b), exponentially expanding this single plaintiff's claimed misclassification to a host of employees whom he failed to show are similarly situated to him. In issuing this certification order, the district court certainly determined the rights and liabilities of

---

[12] **Exhibit 4** (E.D. La. ECF No. 38), at 20–21.

[13] **Exhibit 4** (E.D. La. ECF No. 38), at 17–18 ("In the end, ***the Court finds the putative members of the collective are similarly situated*** as there is a common question at issue in this case—whether the putative members of the collective working on liftboats were affected by a common policy or practice classifying all of them as FLSA-exempt seaman rendering a service that was primarily an aid in the operation of such vessel as a means of transportation, without regard to whether they performed a substantial amount of work of a different character." (emphasis added)).

the parties, eliminating Alliance's affirmative defense that Breaux is not similarly situated to the individuals he seeks to represent, and unreasonably "exert[ing]" the kind of "formidable settlement pressure" this Court expressly cautioned against in the process.[14]

## II.    ARGUMENT

### A.    The Court Has Appellate Jurisdiction

This Court, under 28 U.S.C. § 1292(a)(3), has appellate jurisdiction over appeals from interlocutory decrees of district courts that determine the rights and liabilities of the parties to admiralty cases. To invoke jurisdiction under § 1292(a)(3), three prerequisites must be satisfied:

(1)    the underlying case must be an admiralty case "in which appeals from final decrees are allowed";

(2)    the appeal must be from an interlocutory order or decree of the district court; and

(3)    the order or decree must have determined "the rights and liabilities of the parties."[15]

---

[14] *Swales*, 985 F.3d at 436.

[15] *Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430, 439 (5th Cir. 2024) (quoting *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 663 (7th Cir. 1998) (citation omitted)).

In his motion, Breaux challenges only the third prong, whether the underlying ruling determines the rights and liabilities of the parties.[16] However, for purposes of this appeal, all three requirements for jurisdiction under § 1292(a)(3) are satisfied.[17]

In this case, the collective action order determines the rights and liabilities of the parties. It conclusively establishes rights for non-parties to enjoy party status in this lawsuit and extends the scope of Alliance's liability from a single cook to every other Alliance liftboat employee, predicated on the district court's threshold liability determination that all liftboat crewmembers are "similarly situated" for purposes of the FLSA.

Plaintiff-Appellee's argument to the contrary presents an incredibly narrow interpretation of the word "determine." In the legal context, the word "determine" does not mean "to fix conclusively or authoritatively" but rather "to officially decide (something) especially because of evidence or facts" or "to make a decision

---

[16] It is also crucial to note that the word "and" found within the phrase "rights and liabilities" is used as a disjunctive conjunction. That is why courts have found the requirements of 1292(a)(3) satisfied even when a ruling determines only the liabilities of the parties without discussing the rights of the parties.

[17] In *Diamond*, this Court held that the appeal of an interlocutory order is authorized under § 1292(a)(3) even when the order itself does not involve an admiralty or maritime issue. "[S]o long as the case involves an admiralty claim and an order otherwise meets statutory requirements, the opportunity to appeal should not turn on the circumstance that the order does—or does not— dispose of an admiralty claim. . . ." *Diamond Servs. Corp*, 113 F.4th at 442 (quoting Fed. R. Civ. P. 9(h) note on 1997 Amendment).

Thus, because Breaux chose to sue the L/B MIAMI *in rem*, there is no dispute that this appeal is from an interlocutory order in an admiralty case for purposes of appellate jurisdiction under § 1292(a)(3).

regarding a case, issue or claim."[18] But an order need not resolve *all* of the rights and liabilities to be appealable under 1292(a)(3).[19] "It suffices that the order conclusively lashes down the merits of some particular claim or defense."[20]

Yet, under Plaintiff-Appellee's interpretation of the statute, only final judgments that "conclusively" determine *all* of the parties' liabilities would be appealable under § 1292(a)(3). This narrow reading of course frustrates the purpose of having a statutory provision allowing for the appeal of interlocutory orders in the first place.[21] But because some of the parties' rights and liabilities were determined in this collective action order, the third requirement of § 1292(a)(3) has been

---

18    *Determine*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/determine (accessed November 24, 2025).

19    *See United States v. Ernst Jacob GmbH & Co. KG*, 158 F.4th 232, 245–46 (1st Cir. 2025) ("We held there that '[f]or an interlocutory order to be appealable under 28 U.S.C. § 1292(a)(3), it need not address all of the rights and liabilities at issue in the litigation.'" (quoting *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel*, 833 F.2d 1059, 1063 (1st Cir. 1987))); *see also Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 921 (3d Cir. 1987) ("To be appealable under [§] 1292(a)(3), an order in admiralty need not determine all rights and liabilities of all parties."); *O'Donnell v. Latham*, 525 F.2d 650, 652 (5th Cir. 1976) ("All the rights and liabilities of all the parties need not be determined before such an order is appealable.").

20    *Martha's Vineyard*, 833 F.2d at 1064 (citations omitted); *see also Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832–34 (9th Cir. 2002) (finding jurisdiction to review the district court's grant of partial summary judgment limiting the defendant's liability in accordance with a clause on the back of a cruise ship ticket); *Vision Air Flight Serv., Inc. v. M/V Nat'l Pride*, 155 F.3d 1165, 1168 (9th Cir. 1998) (finding jurisdiction to review the district court's grant of partial summary judgment limiting the defendant's liability pursuant to the Carriage of Goods at Sea Act); *Carman Tool & Abrasives, Inc. v. Evergreen Lines*, 871 F.2d 897, 899 (9th Cir. 1989) (same).

21    *Chem One, Ltd. v. M/V RICKMERS GENOA*, 660 F.3d 626, 642 (2d Cir. 2011) ("Delaying appeal merely because a 'final judgment' as to all of the claims against all of the parties has not been issued would defeat the interlocutory nature of Section 1292(a)(3) and effectively render the statute a nullity in the modern era of litigation in which admiralty suits frequently involve multiple parties and claims.").

satisfied. This can be demonstrated by first discussing the operation of collective action certification and then turning to how such a ruling determines the rights and, separately, the liabilities of the parties.

### 1.    Collective Actions under Section 216(b) of the FLSA

Section 216(b) of the FLSA provides for collective actions by permitting FLSA actions against employers to "be maintained . . . by any one or more employees and on behalf of himself or themselves and other employees similarly situated."[22] Collective actions are an enforcement mechanism unique to the FLSA. Though, at first blush, they resemble a Federal Rule of Civil Procedure 23 class action, the two actions are "fundamentally different" in practice.[23]  In a class action for damages under Rule 23(b)(3), a named plaintiff represents the rights of absent non-party plaintiffs who will be bound by the disposition of the case unless they affirmatively opt out of the class.[24] And the named plaintiff's representative status is created upon the filing of the Rule 23 complaint.[25]

Comparatively, however, for a collective action proceeding, plaintiffs must affirmatively opt in to join the lawsuit to pursue their claims, a right that becomes

---

[22] 29 U.S.C.A. § 216(b).

[23] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013).

[24] *See* 7B Wright & Miller's Federal Practice and Procedure § 1807 (3d ed. 2005).

[25] Importantly, the FLSA provides for a two-year statute of limitations and is extended an extra year only for willful violations. 29 U.S.C. § 255(a). The limitations period for a plaintiff in a collective action under the FLSA runs until a plaintiff or putative class member opts-in by filing a Notice of Consent or files suit. 29 U.S.C. § 256.

wholly available to him only upon the certification of the collective action.[26] Indeed, even where a non-party prematurely files an opt-in notice predicated on the named plaintiff's mere allegation of similarly situated status, "where no class has been certified or where the conditionally certified class has been decertified[, that litigant] must be dismissed without prejudice, as he has opted into a nonexistent class, not into the original lawsuit, and therefore only the original named plaintiff in the suit proceeds."[27]

---

[26] *See* 7B Wright & Miller's Federal Practice and Procedure § 1807 (3d ed. 2005) ("This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not. Consequently, although the original plaintiffs in a collective action may pursue the suit on a representative basis, each FLSA claimant has the right to be present in court to advance his or her own claim. Conversely, only those plaintiffs who have opted in are bound by the results of the litigation.").

[27] *Coder v. M-I, LLC*, No. 17-15074, 2019 WL 5425437, at *4 (E.D. La. Oct. 23, 2019) (citing *Dewan v. M-I, LLC*, No. 15-1746, 2016 WL 695717, at *15 (S.D. Tex. Feb. 22, 2016)); *see also Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995) ("If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice."), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91 (2003); *Quijano v. Tuffy Associates Corp.*, No. 13-573, 2014 WL 4182691, at *1 (M.D. Fla. Aug. 21, 2014) (where plaintiff failed to move for conditional certification, the court granted defendant's motion to dismiss opt-in plaintiff without prejudice and struck collective action allegations from plaintiffs' complaint); *McGlathery v. Lincare*, No. 13-1255, 2014 WL 1338610, at *3 (M.D. Fla. Apr. 3, 2014) (after plaintiffs failed to move for certification of a collective action and requested the court to convert the opt-in plaintiffs to named plaintiffs, the court dismissed claims of opt-in plaintiffs without prejudice, stating "once the possibility of class certification passes . . . opt-in plaintiffs are dismissed without prejudice."); *Clay v. Huntington Ingalls, Inc.*, No. 09-7265, 2012 WL 860375, at *3 (E.D. La. Mar. 13, 2012) (after denying class certification, holding that, "to now allow the Opt-in Plaintiffs to be converted to named plaintiffs would violate the policies and practical considerations underlying the decision not to certify the collective action in the first place."); *Odem v. Centex Homes*, No. 08-1196, 2010 WL 424216, at *2 (N.D. Tex. Feb. 4, 2010) (denying motion for conditional certification of an FLSA collective action and dismissing opt-in plaintiffs without prejudice); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 588 (E.D. La. 2008) (decertifying collective action and dismissing without prejudice "the claims of all opt-in plaintiffs, leaving before the Court the named plaintiffs who originated these actions."); *Zuliani v. Santa Ana, LLC*, No. 17-62080, 2018 WL 3730889, at *1 (S.D. Fl. May 25,

In certifying a collective action under the FLSA, the district court first considers whether the plaintiff has demonstrated the existence of a definable class of potential plaintiffs who are "similarly situated" to him before issuing notice to those individuals meeting the class definition and advising them that a class has been certified.[28] Notably, prior to this Court's decision in *Swales*, district courts followed the two-step *Lusardi* approach to certifying a collective action.[29] Under *Lusardi*, the district court would first *conditionally* certify a class based on the named plaintiff's allegations, allowing non-parties to receive notice and opt-in before any class discovery had been conducted. At step two of *Lusardi*, however, if subsequent discovery revealed that the named plaintiff was not similarly situated to the opt-in plaintiffs, the conditionally certified class would be decertified and the opt-in plaintiffs dismissed.

Following this Court's ruling in *Swales*, the *Lusardi* approach no longer sets forth the legal framework for certification.[30] Since *Swales*, district courts in the Fifth Circuit may only grant certification and issue notice if, in the early stages of the case,

---

2018) ("Generally, when conditional certification of a collective action is denied, existing opt-in plaintiffs are dismissed from the lawsuit without prejudice and the matter proceeds on the named plaintiff's individual claims." (citing *Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018))).

[28] § 2:16 Limitations on applicability of class action device—Collective actions under the Fair Labor Standards Act, 1 McLaughlin on Class Actions § 2:16 (22nd ed.); *see also Mickles*, 887 F.3d at 1276–77; *Thiessen v. Gen. Electric Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *Swales*, 985 F.3d at 440.

[29] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023).

[30] *Id.* at 337.

plaintiffs can demonstrate that notice recipients are "actually similar to the named plaintiffs," by a preponderance of the evidence.[31] "Put differently, with conditional certification [under the *Lusardi* approach] jettisoned, courts must now, at the outset of the case, determine whether any employees are similarly situated."[32]

"Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were."[33] Thus, in effect, post-*Swales*, a district court's certification order makes an affirmative finding that the class of employees eligible to opt-in "performed the same tasks and were subject to the same policies," a threshold finding that liability may be determined on a class-wide basis. Such a certification order plainly does more than simply opine on the "how and where" of liability, as Breaux so narrowly suggests.

"The plain text of the FLSA states that plaintiffs must be similarly situated if they are to proceed collectively,"[34] and "*Swales* demands that district courts decide

---

[31] *Swales*, 985 F.3d at 434.

[32] *Gomez v. Glob. Precision Sys.*, 636 F. Supp. 3d 746, 751 (W.D. Tex. 2022).

[33] *Clark v. A&L Homecare and Training Ctr.*, LLC, 68 F.4th 1003, 1011 (6th Cir. 2023) (disagreeing with this Court's holding in *Swales* on what showing a plaintiff must make as to similarly situated status before notice may issue to non-parties) (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745–46 (6th Cir. 2019)).

[34] *Richard v. Eli Lilly & Co.*, 149 F.4th 901, 911 (disagreeing with this Court's holding in *Swales* as to what a plaintiff must prove with respect to similarly situated status before notice may issue to non-parties) (citing 29 U.S.C. § 216(b)).

whether any employees are similarly situated before the court facilitates sending an opt-in notice to potential plaintiffs."[35] "[A]n employee can't properly join the collective (or file effective written consent) unless they are 'similarly situated' to the named plaintiffs."[36] Indeed, "notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own."[37] Thus, the class certification order conclusively determines who is and is not similarly situated, thereby affirmatively vesting non-parties with the full right to opt-in where previously only a tentative right existed.

After receiving notice of the right to join the lawsuit, each similarly situated employee must affirmatively choose to exercise their right to "become parties" by opting into the collective action.[38] Unlike a class action, each similarly situated employee who exercises their right to join the collective enjoys party status.[39] Critically, "Section 216(b), [in contrast to class action procedure under Rule 23], is tailored specifically to vindicating federal labor rights, and where the conditions of

---

[35] *Gomez*, 636 F. Supp. 3d at 754 (citing *Swales*, 985 F.3d at 442–43).

[36] *Id.* at 753.

[37] *Clark*, 68 F.4th at 1010 (citing *Swales*, 985 F.3d at 434).

[38] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013); *accord Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 n.1 (7th Cir. 2020).

[39] *See* Wright & Miller, *supra*, § 1807.

§ 216(b) are met," namely, being similarly situated, "***employees have a substantive 'right' to proceed as a collective***, a right that does not exist under Rule 23."[40]

Here, the district court granted Breaux's motion for class certification, notwithstanding his failure to provide the district court with any evidence capable of demonstrating that he was similarly situated to any other putative class member. Nevertheless, in what began as a mere allegation that a single liftboat's cook was similarly situated to all other liftboat employees is now an affirmative, and more importantly the conclusive, decision of the district court. This sweeping ruling, which certified a collective action comprising all Alliance (and non-party Helix Energy Solutions) employees on nine different vessels, determines the parties' rights and liabilities. Jurisdiction, therefore, is proper under § 1292(a)(3).

### 2.     *Collective Action Certification Determines the Parties' Rights*

The district court's order certifying a collective action determines the rights of the parties, as the order extends the conclusive right to proceed against the employer to non-parties. Though collective class certification, a right—namely, an "interest, claim, or ownership that one has in tangible or intangible property"[41]—is definitively extended to similarly situated employees who fall under the district

---

[40] *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020) (citing 29 U.S.C. § 216(b)) (emphasis added); *see also Hoffmann-La Roche*, 493 U.S. at 173 (noting that Congress gave similarly situated employees the "right" to proceed collectively); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396–97 (6th Cir. 2017).

[41] Black's Law Dictionary (12th ed. 2024) "**right**."

court's class definition. The collective action order determines the parties' rights by definitively determining the "right" for non-parties to join the lawsuit.

The starting point in statutory analysis is the text of the statute itself.[42] Section 216(b) is entitled "Damages; right of action; attorney's fees and costs; termination of right of action." It describes the ability to join non-employees to the lawsuit as party plaintiffs as "***the right*** [provided by this subsection] of any employee to become a party plaintiff to any such action."[43] Thus, a district court's order allowing an individual's FLSA claim to proceed as a collective action conclusively confers the "right" to join the lawsuit to non-parties.

This Court held in *Swales* that, when managing a putative FLSA collective action, "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly."[44] If the court decides that the named plaintiff has proven, by a preponderance of the evidence, that he is similarly situated to those he seeks to represent, the district court will grant certification, conclusively establishing the non-party's right to join the lawsuit.

---

[42] 29 U.S.C.A. § 216(b).

[43] *Id.* (emphasis added).

[44] *Swales*, 985 F.3d at 441.

This statutorily created "right" to proceed as a collective is an enforceable right that courts extend to non-parties, who are in turn informed about the right through the court-authorized notice. In accordance with the FLSA's plain language, "which twice uses the term 'right,'" this right is determined at the time that a district court orders that a collective action may proceed.[45] The creation of this right conferred to non-parties is precisely what the challenged class certification order did in this case. Plaintiff-Appellee does not contest that a collective action order extends rights to non-parties. In fact, it is the very reason that Plaintiff-Appellee moved to certify the collective through a class definition in the first place.

It is evident from the statutory framework, its text, and the jurisprudence that a right, which existed only tentatively until the district court certified this collective action, is fully established in the collective action order and extended to non-parties. This operation clearly determines the rights of the parties and affirmatively extends those rights to non-parties. In this case, the district court's order extended this right well beyond the single named Plaintiff who served only as a cook aboard a single liftboat, including conferring this right to captains, engineers, and other seamen who served on any of the many liftboats in Defendant-Appellant's fleet.[46]

---

[45] *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1106 (9th Cir. 2018) ("The City . . . contends no such right exists, but it does not attempt to square this assertion with the plain language of the FLSA, which twice uses the term 'right.'" (cleaned up)).

[46] To be considered a seaman for purposes of the FLSA, the employee does not have to be involved in the vessel's navigation. For example, chipping paint and repainting the deck is

Jurisdiction, therefore, is proper under § 1292(a)(3), as the collective action order determines the parties' rights.

### 3.    *Collective Action Certification Determines the Parties' Liabilities*

The collective action order also determines and extends Alliance's potential liability to all of its liftboat employees, including those categories of employees for whom Plaintiff-Appellee provided no evidence of what they "actually do" aboard any given vessel.[47] Such an order conclusively determines a critical aspect of the parties' liabilities, since the determination to proceed as a collective is predicated on a finding that liability can be decided on a class-wide basis.[48] Indeed, Alliance will have no opportunity to move for decertification of this collective action, even if subsequent merits based discovery (which will undoubtedly go beyond simply how often a single vessel was jacked-up) were to conclusively demonstrate that Plaintiff-Appellee is not similarly situated to any other employee in the now certified class.[49]

---

considered FLSA seaman work. *See Coffin v. Blessey Marine Services, Inc.*, 771 F.3d 276, 285 (5th Cir. 2014) ("The basic maintenance of a vessel is almost always seaman work for FLSA purposes.").

[47] *Walling v. W.D. Haden Co.*, 153 F.2d 196, 199 (5th Cir. 1946) (explaining that the FLSA seaman exemption depends on what the employees "actually do").

[48] *See Rindfleisch v. Gentiva Health Services, Inc.*, 22 F. Supp. 3d 1295, 1303 (N.D. Ga. 2014).

[49] The district court's decision in *Hamm v. Acadia Healthcare Co.* demonstrates how this certification places Alliance between a rock and a hard place. In that case, the district court held that it would not decertify the collective, based on evidence that revealed differences in the employees' jobs, break schedules, and diverse basis of claims, once it was the class had been certified. *See Hamm v. Acadia Healthcare Co., Inc.*, 748 F. Supp. 3d 404, 412 (E.D. La. 2024) (Morgan, J.) ("[T]he Court finds once certified under the *Swales* framework, after an opportunity to conduct preliminary discovery and fully brief the issues, there is no justification for a motion to decertify and to allow such a motion would be a waste of judicial resources.").

This collective action order, therefore, cannot be challenged in the litigation and will have a *res judicata* effect in determining similarly situated status for Alliance employees, leaving Alliance unable to challenge this aspect of liability until a final judgment issues.

The jurisprudence, especially that on which Plaintiff-Appellant relies in his motion, demonstrates exactly why this collective action order determines the liabilities of the parties. Consider this Court's holding in *SCF Waxler Marine*, where the Court clarified that it would not exercise jurisdiction when no substantive issue had been decided.[50] In that case, the interlocutory order was a denial of summary judgment on the issue of whether, by a declaratory judgment, the plaintiff companies could have the court definitively rule that the excess insurance carriers of the

---

Alliance contends that the district court's reasoning in *Hamm* directly contravenes this Court's holding in *Swales*. While not directly addressed in *Swales*, Judge Willett's opinion in *Swales* did not establish that decertification of a collective is no longer possible, especially after discovery is conducted. There was no mandate to never allow for "decertification," especially when discovery establishes that the members of the collective are not similarly situated. *See Swales*, 985 F.3d at 443 ("After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be 'similarly situated' for purposes of answering whether they are in fact employees, or at least that Plaintiffs have not met their burden of establishing similarity. If that is the case, it may decide the case cannot proceed on a collective basis. The district court may instead decide that it needs further discovery to make this determination. Or it may find that only certain subcategories of drivers, depending on their economic dependence on [the defendant company], should receive notice.").

[50] *SCF Waxler Marine, L.L.C. v. ARIS T M/V*, 902 F.3d 461 (5th Cir. 2018), *as revised* (Oct. 30, 2018).

defendant vessel could not limit their liability pursuant to a clause in the insurance policy.[51]

The district court, however, ruled the opposite way, denying the motion and holding that the insurance carriers *could* exercise the contractual limitation of liability *if* liability were found in that case.[52] The plaintiff companies appealed under 28 U.S.C. § 1292(a)(3)—but no parties had been added or dropped from the matter and no substantive issues had been decided. Rather, as the Fifth Circuit rightly pointed out in ruling on the subsequent motion to dismiss the appeal, all the district court decided was that "a potentially liable party may limit his liability."[53]

But the Fifth Circuit in *SCF Waxler Marine* also set forth the situations in which jurisdiction would exist. For example, if the district court had held that the insurers were not entitled to exoneration or limitation or that an insurance company owed neither indemnity nor coverage, appellate jurisdiction would be appropriate.[54] The Court cited to *Republic of France v. United States*, where this Court held that a denial of a limitation of liability supported appellate jurisdiction under § 1293(a)(3), even when "[t]he merits of the claims . . . have not" yet been determined, in support

---

51 *Id.* at 463–64.
52 *Id.*
53 *Id.* at 468 n.6.
54 *Id.* at 467.

of finding jurisdiction under those circumstances.[55]    The reason such a ruling "determined the rights and liabilities of the parties" is because the ruling served as "res judicata on the issue of liability for the damages."[56]

The interlocutory ruling in *SCF Waxler* Marine, denying the motion for summary judgment on a limitation of liability, was not *res judicata* on any aspect of liability. Thus, the Court found that jurisdiction was not supported under § 1293(a)(3). The ruling does not stand for the proposition, as Plaintiff-Appellee asserts, that the question is simply one of procedure versus substance.[57] Rather, the question is whether the ruling determines the rights and liabilities of the parties, and in determining liability the Court must ask if the ruling is *res judicata* on some component of liability.

Similarly, the Court's decision in *In re Complaint of Ingram Barge Co.* also demonstrates why the district court's ruling in this case determines the liability of the parties.[58]  *Ingram* dealt with striking Rule 23 class action claims from a complaint—it did not determine the rights and liabilities of the parties because the plaintiffs could still pursue their claims individually.[59] However, that case did not

---

[55] *Republic of France v. United States*, 290 F.2d 395, 397 (5th Cir. 1961).

[56] *Id.*

[57] *SCF Waxler Marine*, 902 F.3d 467.

[58] *In re Complaint of Ingram Barge Co.*, 517 F.3d 246 (5th Cir. 2008).

[59] *Id.* at 247.

deal with class certification, let alone collective class certification under the FLSA, as the Court specifically emphasized the fact that there was no order granting or denying class certification in that case.[60] Comparatively, here, the non-parties' right to opt into the collective action and the unnamed employees' similarly situated status have been finally determined, meaning that the interlocutory order is appealable under § 1292(a)(3).

The other cases Plaintiff-Appellee relies on in contending that the collective action order does not affect liability also fail to address the grounds of this appeal. It is beyond contention that an interlocutory order staying litigation does not determine the rights and liabilities of the parties.[61] Moreover, the *granting* of the collective action order does not resemble the *denial* of a motion for summary judgment with respect to the effect that the ruling has on the liability of the parties.[62] This case does not fall within the same class of cases that Plaintiff-Appellee cites to.

Rather, this case resembles the procedural background of those decisions where jurisdiction under § 1292(a)(3) was found regarding the grant of a motion to strike an affirmative defense or the grant of partial summary judgment. For example, the Ninth Circuit recently ruled that, pursuant to the plain meaning of § 1292(a)(3),

---

[60] *Id.*

[61] *See Complaint of Ingram Towing Co.*, 59 F.3d 513, 517 (5th Cir. 1995).

[62] *Francis on Behalf of Francis v. Forest Oil Corp.*, 798 F.2d 147, 150 (5th Cir. 1986).

the granting of a motion to strike one of the defendant's affirmative defenses, the application of a liability waiver, determined the rights and liabilities of the party.[63]

The appellate court explained that the ruling determined the rights and liabilities of the parties since the ruling changed "what the plaintiff would have to prove to recover."[64] Therefore, the recent jurisprudence has looked to the effect of the ruling rather than the type of ruling in determining whether jurisdiction exists under § 1292(a)(3).[65] Crucially, Alliance, in answering, denied that Breaux was similarly situated to his proposed class, an allegation now deemed proven, and asserted the affirmative defense that "Plaintiff is not an appropriate representative of the proposed class due to a lack of typicality or commonality with the claims of the proposed class members," an affirmative defense the district court's order now prohibits Alliance from asserting.[66]

The challenged interlocutory order in this case, like all collective action certifications, establishes employer liability on a class-wide basis.[67] In effect, the district court determined that all Alliance liftboat employees are similarly situated,

---

[63] *Ehart v. Lahaina Divers, Inc.*, 92 F.4th 844 (9th Cir. 2024) (Bea, J.).

[64] *Id.* at 250 n.8 (cleaned up).

[65] *See also Ernst Jacob*, 158 F.4th at 246 ("We note, too, that the purpose of § 1292(a)(3) is to allow parties to challenge a liability ruling prior to the costly evaluation of damages that is common in many admiralty suits. That purpose accords with permitting an appeal of a liability determination even when the third-party claims have not ripened.").

[66] *See* **Exhibit 2** (E.D. La. ECF No. 7), at "Third Affirmative Defense."

[67] *Willoughby v. Youth Villages, Inc.*, 113 F. Supp. 3d 1265, 1272 (N.D. Ga. 2015).

nullifying Alliance's denials and affirmative defense that Breaux is not similarly situated to the class of employees he seeks to represent. The scope of liability here has been extended dramatically to employees who, Alliance contends, are plainly not similarly situated to the sole named Plaintiff-Appellee.

This determination cannot be challenged until a final judgment issues—the definition that determines what class of employees are similarly situated to Breaux will stand as *res judicata* for this matter. But even if this Court reasons the opposite—that a collective action certification, in theory, should not be determinative of the liabilities of the parties—the district court's own precedent and practice confirms that the certification will have that effect.

Once a collective action is certified, according to the district court, "there is no justification for a motion to decertify and to allow such a motion would be a waste of judicial resources."[68] In operative effect, the certification is unchallengeable— there is no further opportunity to contest whether this lawsuit should include an incredibly large scope of employees who performed jobs vastly different than simply cooking food aboard the vessel. Thus, even if the Court does not find that, *in theory*, a collective action certification should determine the liabilities of the parties, there is no question that *in practice* this certification determines the scope of liability and

---

[68] *Hamm*, 748 F. Supp. 3d at 412 (Morgan, J.).

will have *res judicata*, i.e., binding and irreversible effect, on the parties in the district court.

Jurisdiction, therefore, is proper under § 1292(a)(3), as the collective action order determines the parties' liability.

## III.   <u>CONCLUSION</u>

Plaintiff-Appellee sought to determine and extend the right to join this lawsuit by moving to certify a collective action. Moreover, he also asked the district court to determine the scope of Alliance's liability through collective action proceedings. The district court's challenged order granted these requests. Plaintiff-Appellee cannot seek to have the rights and liabilities of the parties determined while also arguing the district court's order had no such effect. The Motion should be denied as a consequence.

Alliance respectfully submits that this Court has jurisdiction under 28 U.S.C. §1292(a)(3), and the merits of this appeal from an improperly certified collective action should proceed to this Court's full review.[69]

**[signature block appears on next page]**

---

[69] Defendant-Appellant specifically reserves and does not waive its right to seek relief through a petition for writ of mandamus on this appealed collective action order should this Court determine that appellate jurisdiction does not exist under 28 U.S.C. §1292(a)(3).

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:

David M. Korn (Bar #21676)
Stephanie M. Poucher (Bar #37263)
Brendan J. Besh (Bar #40280)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email:kornd@phelps.com
        stephanie.poucher@phelps.com
        brendan.besh@phelps.com

*ATTORNEYS FOR DEFENDANT-*
*APPELLANT, ALLIANCE LIFTBOATS,*
*LLC*

26

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this 4th day of December, 2025 with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

Stephanie M. Poucher

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND <u>TYPE STYLE REQUIREMENTS</u>

1.     This brief complies with the type-volume limitation of Fed R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 7,042 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,

BY: _____
Stephanie M. Poucher

***ATTORNEYS FOR DEFENDANT-
APPELLANT, ALLIANCE LIFTBOATS, LLC***

Dated: December 4, 2025

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PATRICK BREAUX, et al.**

                    **Plaintiffs,**

           **v.**

**ALLIANCE LIFTBOATS, LLC, et al.**

                    **Defendants.**

**CIVIL ACTION NO.:  2:24-cv-01000**

**JUDGE SUSIE MORGAN**

**MAGISTRATE JUDGE KAREN WELLS ROBY**

## DECLARATION OF JARED CHIASSON

1.  My name is Jared Chiasson.  I am over 18 years of age and competent in all respects to make this Declaration pursuant to 28 U.S.C. § 1746.  I have personal knowledge of the facts in this Declaration; can testify to their accuracy; and make this Declaration voluntarily.

2.  I am currently employed as Personnel Manager at Alliance Liftboats, LLC and have been employed in this capacity by either Alliance Liftboats, LLC or a predecessor in interest for 12 years. As part of my duties as Personnel Manager, I am familiar with Alliance Liftboats' operations, including the functions and duties performed by those employed aboard our vessels.

3.  Alliance Liftboats' employees who work aboard liftboats are Coast Guard licensed mariners who served as mates, deckhands, ordinary seamen, and able-bodied seamen.

4.  Those who perform work as crane operators, cooks, and galley hands aboard liftboats are crewmembers subject to the direct supervision of the vessel's captain.

5.  The vessel's crewmembers live, eat, sleep, and work aboard the vessel for the duration of their hitch assignments.

6.  Each crewmember aboard an Alliance Liftboat is answerable to the vessel's captain.

**EXHIBIT 1**

7. Each crewmember aboard an Alliance Liftboat is required to perform their duties safely so that the vessel can safely operate on navigable waters.

8. The employees whose duties include cooking are also required to perform work other than cooking while aboard the vessel.

9. All employees whose duties include cooking, like Plaintiff, prepare meals for other crewmembers aboard the vessel, work that is central to the vessel's purpose.

10. The employees whose duties include operating the crane are also required to perform work other than operating the crane while aboard the vessel.

11. On board Alliance Liftboats, there is no one employee whose sole job is to operate the crane.

12. The loading and unloading duties performed by employees whose duties include operating the crane perform work that is central to the vessel's function.

13. While operating the crane, crewmembers are responsible for moving personnel and cargo between the vessel and other platforms, docks, and vessels, as well as within the vessel itself. This work is performed in close coordination with the vessel's operational needs and is critical to the vessel's ability to fulfill the purpose of its charter.

14. When a liftboat is jacked up, its crewmembers retain responsibility for various mandatory tasks, including standing lookout, checking the engine room, splicing rope, cleaning, and performing other duties critical for maintaining the safe operation of the vessel.

15. I declare under the penalty of perjury that the foregoing is true and correct.

**Executed this** _19th_ **day of May, 2025.**

**JARED CHIASSON**

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PATRICK BREAUX, et al.**<br>                              **Plaintiffs,** | **CIVIL ACTION NO.:  2:24-cv-01000** |
| **v.** | **JUDGE SUSIE MORGAN** |
| **ALLIANCE LIFTBOATS, LLC, et al.**<br>                              **Defendants.** | **MAGISTRATE JUDGE KAREN WELLS ROBY** |

**ANSWER & AFFIRMATIVE DEFENSES**

**NOW INTO COURT**, through undersigned counsel, comes Defendant Alliance Liftboats, LLC ("Defendant"), and appearing solely for the purpose of this pleading, reserving all rights, motions and defenses and without waiver thereof, respectfully submits this Answer & Affirmative Defenses to the claims asserted against it by Plaintiff, Patrick Breaux ("Plaintiff").

**I.        NATURE OF THIS LAWSUIT**

1.     The allegations in paragraph 1 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

**II.       BACKGROUND**

2.     Admitted.

3.     Denied as written.

4.     Denied.

5.     Denied.

6.     Denied.

7.     Denied.

8.     Denied.

9.     Denied.

**EXHIBIT**
**2**

10.     Denied.

11.     The allegations in paragraph 11 set forth legal conclusions that require no response.  To
the extent a response is required to the allegations, the allegations are denied.

12.     The allegations in paragraph 12 set forth legal conclusions that require no response.  To
the extent a response is required to the allegations, the allegations are denied.

### III.     JURISDICTION AND VENUE

13.     The allegations in paragraph 13 set forth legal conclusions that require no response.  To
the extent a response is required to the allegations, the allegations are denied.

14.     The allegations in paragraph 14 set forth legal conclusions that require no response.  To
the extent a response is required to the allegations, the allegations are denied.

15.     The allegations in paragraph 15 set forth legal conclusions that require no response.  To
the extent a response is required to the allegations, the allegations are denied.

### IV.     THE PARTIES

16.     Denied.

17.     The allegations in paragraph 17 set forth legal conclusions that require no response.  To
the extent a response is required to the allegations, the allegations are denied.

18.     The allegations in paragraph 18 set forth legal conclusions that require no response.  To
the extent a response is required to the allegations, the allegations are denied.

19.     Defendant lacks sufficient knowledge to admit or deny the allegations stated in paragraph
19.  Accordingly, the allegations set forth in paragraph 19 are denied.

20.     Admitted.

21.     The allegations in paragraph 21 set forth legal conclusions that require no response.  To
the extent a response is required to the allegations, the allegations are denied.

22.     The allegations in paragraph 22 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

23.     Denied.

24.     Admitted.

25.     The allegations in paragraph 25 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

## V.     FACTUAL ALLEGATIONS

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     The allegations in paragraph 31 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

32.     Denied.

## VI.     COLLECTIVE ACTION ALLEGATIONS

33.     The allegations in paragraph 33 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

34.     Defendant denies the allegations set forth in paragraph 34 to the extent the allegations differ from the contents of Exhibit A to Plaintiff's Complaint.

35.     The allegations in paragraph 35 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

PD.45707403.1

36.     The allegations in paragraph 36 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

37.     Denied as written.

38.     Denied as written.

39.     Denied as written.

40.     Denied as written.

41.     Denied as written.

42.     Denied as written.

43.     Denied as written.

44.     The allegations in paragraph 44 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

### VII.     COUNT I

### FAILURE TO PAY OVERTIME
### (COLLECTIVE ACTION)

45.     Defendant incorporates here the previous denials of this Answer.

46.     The allegations in paragraph 46 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

47.     The allegations in paragraph 47 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

48.     The allegations in paragraph 48 set forth legal conclusions that require no response.  To the extent a response is required to the allegations, the allegations are denied.

49.     Denied as written.

50.     Denied as written.

51.     Denied.

52.     Denied.

53.     The allegations in paragraph 53 set forth legal conclusions that require no response.  To
        the extent a response is required to the allegations, the allegations are denied.

54.     The allegations in paragraph 54 set forth legal conclusions that require no response.  To
        the extent a response is required to the allegations, the allegations are denied.

55.     Denied.

56.     The allegations in paragraph 56 set forth legal conclusions that require no response.  To
        the extent a response is required to the allegations, the allegations are denied.

## VIII.   COUNT II

## IN REM ACTION AGAINST THE L/B MIAMI

57.     The allegations in paragraph 57 set forth legal conclusions that require no response.  To
        the extent a response is required to the allegations, the allegations are denied.

58.     The allegations in paragraph 58 set forth legal conclusions that require no response.  To
        the extent a response is required to the allegations, the allegations are denied.

59.     The allegations in paragraph 59 set forth legal conclusions that require no response.  To
        the extent a response is required to the allegations, the allegations are denied.

60.     The allegations in paragraph 60 set forth legal conclusions that require no response.  To
        the extent a response is required to the allegations, the allegations are denied.

61.     The allegations in paragraph 61 set forth legal conclusions that require no response.  To
        the extent a response is required to the allegations, the allegations are denied.

## IX.    PRAYER

Defendant expressly denies Plaintiff is entitled to any damages, including those sought in
the paragraph and subparagraphs entitled "PRAYER."

## DEFENDANT'S AFFIRMATIVE DEFENSES

By setting forth these defenses, Defendant does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state facts sufficient to constitute any cause of action and/or claim or demand against Defendant upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim against Defendant upon which an award of compensatory, liquidated and/or punitive damages may be granted.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is not an appropriate representative of the proposed class due to a lack of typicality or commonality with the claims of the proposed class members.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of unclean hands, waiver, estoppel, and/or laches or by virtue of his own acts, omissions, fault, dereliction, and/or negligence.

### FIFTH AFFIRMATIVE DEFENSE

This Court lacks jurisdiction over the subject matter of the complaint and over the vessel in question.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff, and other similarly situated employees, are exempt from overtime pay

- 6 -

requirements under the FLSA due to the nature of their employment.

### SEVENTH AFFIRMATIVE DEFENSE

Certain potential collective action members are not employees under the FLSA but are independent contractors and are, therefore, not entitled to the protections of the FLSA.

### EIGHTH AFFIRMATIVE DEFENSE

All compensable time has been appropriately accounted for and compensated in accordance with the FLSA.

### NINTH AFFIRMATIVE DEFENSE

Defendant expressly pleads offset as it relates to any amounts which Plaintiff alleges he is owed (which amounts are expressly denied by Defendant).

### TENTH AFFIRMATIVE DEFENSE

Assuming Plaintiff is able to prove his claims (which is expressly denied), Defendant acted in good faith, on reasonable grounds, and with legal cause.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendant expressly reserves the right to file and assert any other denials and defenses or assert further affirmative defenses that are or may become available or appear during the subsequent proceedings in this action, or as may be established during discovery and/or by the evidence in this case. Defendant further reserves its right to amend this Answer to assert such defenses upon discovery of further information regarding Plaintiff's purported individual, collective action, and/or *in rem* claims.

**WHEREFORE**, Defendant Alliance Liftboats, LLC, prays that its Answer and Affirmative Defenses be deemed good and sufficient and, after due proceedings are had, that there be judgment issued in its favor dismissing all of Plaintiff's allegations and claims, as well as

- 7 -

Plaintiff's Demands, with prejudice, at Plaintiff's cost, and awarding to Defendant reasonable attorneys' fees and costs, and for all general and/or equitable relief to which Defendant is justly entitled.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    /s/ Stephanie M. Poucher
           David M. Korn (Bar #21676)
           Stephanie M. Poucher (Bar #37263)
           Canal Place | 365 Canal Street, Suite 2000
           New Orleans, Louisiana 70130
           Telephone: 504 566 1311
           Facsimile: 504 568 9130
           Email: kornd@phelps.com
           Email: pouchers@phelps.com

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 14th day of June, 2024, I filed the foregoing with the Clerk of Court by using the CM/ECF system which sends copies of the Pleadings to all involved parties through electronic mail.

_____/s/ Stephanie M. Poucher____

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PATRICK BREAUX,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO. 24-1000** |
| | |
| **ALLIANCE LIFTBOATS, LLC, ET AL.,** | **SECTION: "E" (4)** |
| **Defendants** | |

## ORDER AND REASONS

On April 19, 2024, Plaintiff Patrick Breaux filed this collective action, asserting that he and other similarly situated individuals were misclassified under the Fair Labor Standards Act ("FLSA") by his Defendant employer, Alliance Liftboats, LLC.[1] Plaintiff alleges he and other similarly situated employees were misclassified as seamen and, as a result, their employer improperly considered them exempt from state and federal overtime laws and denied them overtime pay.[2] Defendants deny Plaintiff's allegations and assert that Plaintiff and other similarly situated employees have not been misclassified.[3] Defendants argue Plaintiff and other employees are exempt from overtime pay under the FLSA due to the nature of their employment.[4]

The Court's Scheduling Order set a status conference for September 4, 2024, for the purpose of "identify[ing] what facts and legal considerations will be material for determining whether the group of employees is 'similarly situated' for purposes of a collective action under the Fair Labor Standards Act and authoriz[ing] preliminary discovery accordingly."[5] In preparation for the status conference, the Scheduling Order

---

[1] R. Doc. 1.
[2] *Id.* at p. 2.
[3] R. Doc. 7, pp. 6-7.
[4] *Id.*
[5] R. Doc. 11, p. 3.

EXHIBIT
**3**

instructed that "Plaintiff's counsel shall provide the Court with a letter setting out what preliminary discovery counsel thinks is necessary for the 'similarly situated' inquiry."[6] Additionally, within three days of receipt of the letter, "Defense counsel shall provide the Court with a letter in the same manner responding to the preliminary discovery proposed by Plaintiff's counsel."[7] Plaintiff timely submitted his letter to the Court on August 27, 2024. Defendants timely submitted their letter on August 30, 2024.

In his letter, Plaintiff argued that preliminary discovery should involve the determination of seaman status under the FLSA for Defendant's employees working on Alliance liftboats during the relevant time period. Plaintiff further submitted

> that the "similarly situated" inquiry involves the identity of those individuals working on Alliance liftboats, either as cooks, crane operators or other employees assigned to the Alliance liftboats, in the time period subject to the FLSA: 2021, 2022, 2023, and 2024. The discovery necessary for this determination is primarily written discovery including vessel logs, persons on board logs, individual payroll/income records for the Alliance employees, job descriptions, daily work logs, and other similar documentation [of] what Alliance employees assigned to Alliance liftboats were doing when and what the status of the vessels was at during those times, over the course the relevant [four year] period.

Defendants argued that Plaintiff's preliminary discovery plan was "impermissibly broad," and that the discovery plan should be limited to "whether Plaintiff is similarly situated to 'cook[s] aboard the L/B MIAMI,' whose primary duties, like Plaintiff, 'included cooking meals for crewmembers and for passengers,' and were subject to the same 'payment provisions' that Plaintiff contends he was. Defendants argued that Plaintiff inappropriately seeks discovery on all Alliance employees over a four-year period, which is beyond the scope of discovery needed for the similarly situated inquiry.

---

[6] *Id.*

[7] *Id.* Both letters were emailed to the Court. The letters are attached to this Order as attachment 1 (Plaintiff's letter) and attachment 2 (Defendants' letter).

The Fifth Circuit case, *Swales v. KLLM Transport Services*, is directly on point.[8] In *Swales*, the Fifth Circuit held that a district court must identify "at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly."[9] The Fifth Circuit recognized that the amount of preliminary discovery needed may vary depending on the facts and circumstances of the plaintiffs' employment situations: where plaintiffs hold similar employment positions, "a district court will not likely need mountains of discovery," but in other cases, "where Plaintiffs have demonstrably different work experiences, the district court will necessarily need more discovery . . . ."[10] A district court is to "consider all of the available evidence," and the court has "broad, litigation-management discretion" to regulate discovery to determine "whether and to whom notice should be issued."[11]

In this matter, Plaintiff brings this collective action on behalf of himself and other similarly situated employees who did not navigate any Alliance liftboats, who were misclassified as exempt employees, and who were not paid earned overtime pay in violation of the FLSA.[12] Plaintiff's proposed collective action class definition includes:

> *All individuals employed by Alliance Liftboats, LLC and/or Helix Energy Solutions and crewmembers of the following vessels: L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DLLAS for the last three years, whose work did not serve the vessels' operation as a means of transportation, yet were classified as exempt from overtime ("Collective Action Members").[13]*

---

[8] *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).
[9] *Id.* at 441.
[10] *Id.* at 441-42.
[11] *Id.* at 442-43.
[12] R. Doc. 1, pp. 2-3.
[13] *Id.* at p. 5.

In determining the scope of the discovery plan in this matter, guided by *Swales*, the Court must consider all the evidence necessary to determine the extent to which Plaintiff is similarly situated to other employees.[14] The evidence discovered will guide the Court's determination of whether this action should be litigated collectively.[15] The discovery plan should broadly allow for discovery of the identities of all Alliance liftboat employees and their job duties in order to evaluate whether any or all of the employees are similarly situated to Plaintiff.[16] The Court will adopt Plaintiff's proposed discovery plan.

The Court adheres to *Swales'* instruction "that district courts should rigorously enforce [the FLSA's similarly requirement] at the outset of the litigation."[17] The Court finds that allowing for a broad scope of discovery at this stage of litigation furthers this objective. As the Court continues to "consider[] all available evidence," it reserves the right to decide whether further discovery is needed or not and to act accordingly based on the "broad, litigation-management discretion.[18]

Accordingly;

---

[14] *Swales*, 985 F.3d at 442.

[15] *Id.* ("Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits. Rather, addressing these issues from the outset aids the district court in deciding whether notice is necessary. . . . When a district court ignores that it can decide merits issues when considering the scope of a collective, it ignores the 'similarly situated' analysis and is likely to send notice to employees who are not potential plaintiffs.").

[16] *Id.* ("[When] the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job . . . . a district court will not likely need mountains of discovery to decide whether notice is appropriate. In another case . . . where Plaintiffs have demonstrably different work experiences, the district court will necessarily need more discovery to determine whether notice is going out to those "similarly situated.").

[17] *Id.* at 443.

[18] *Id.*

## <u>CONCLUSION</u>

**IT IS ORDERED** that the Plaintiff may conduct discovery on the identity of those individuals working on Alliance liftboats, either as cooks, crane operators or other employees, and the nature of their work performed, in the time period subject to the FLSA: 2021, 2022, 2023, and 2024, including written discovery such as individual payroll/income records for the Alliance employees, job descriptions, and the production of documents such as vessel logs, persons on board logs, daily work logs, as well as other similar documentation needed to show what work Alliance employees assigned to Alliance liftboats were doing and when and what the status of the vessels was during those times.[19]

**New Orleans, Louisiana, this 5th day of September, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[19] The Court reserves the right to modify the scope of the discovery plan as needed. In accordance with this Court's September 4, 2024 Minute Entry, located at Record Document 12, the parties are to exchange and confer on proposed written discovery requests prior to the October 10, 2024 status conference in this matter.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PATRICK BREAUX,** | **CIVIL ACTION** |
|     **Plaintiff** | |
| | |
| **VERSUS** | **NO. 24-1000** |
| | |
| **ALLIANCE LIFTBOATS, LLC, ET AL.,** | **SECTION: "E" (4)** |
|     **Defendants** | |

**ORDER AND REASONS**

Before the Court is a motion to certify collective action by Plaintiff Patrick Breaux ("Plaintiff").[1] Defendant Alliance Liftboats, LLC ("Defendant" or "Alliance") opposes.[2] Plaintiff filed a reply.[3] The Court held oral argument on the instant motion on August 20 and August 29, 2025.[4] The Plaintiff filed supplemental memorandums following oral argument,[5] as did the Defendant.[6]

**BACKGROUND**

On April 19, 2024, Plaintiff filed this suit to recover unpaid overtime wages from Defendant Alliance and against the Defendant L/B MIAMI in rem under the Fair Labor Standards Act ("FLSA").[7] Plaintiff alleges he worked as a cook aboard the L/B MIAMI for the past three years.[8] As a cook, Plaintiff alleges he "was paid a day rate," regardless of the number of hours he worked in a week.[9] Plaintiff alleges that he "regularly worked over 40

---

[1] R. Doc. 19.
[2] R. Doc. 23.
[3] R. Doc. 26.
[4] R. Doc. 30.
[5] R. Docs. 33 and 35.
[6] R. Docs. 34 and 36.
[7] R. Doc. 1.
[8] *Id.* at ¶ 26.
[9] *Id.* at ¶ 5.

**EXHIBIT**
**4**

hours in a week."[10] Plaintiff alleges Defendant misclassified him as exempt from state and federal overtime law and did not pay him overtime wages.[11]

Plaintiff seeks to have the Court certify a collective action.[12] Pursuant to the United States Court of Appeals for the Fifth Circuit's opinion in *Swales v. KLLM Transport Services*, the Court authorized preliminary discovery.[13] Under binding Fifth Circuit precedent, in a collective action case, "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly."[14] In compliance with this dictate, this Court authorized

> discovery on the identity of those individuals working on Alliance liftboats, either as cooks, crane operators or other employees, and the nature of their work performed, in the time period subject to the FLSA: 2021, 2022, 2023, and 2024, including written discovery such as individual payroll/income records for the Alliance employees, job descriptions, and the production of documents such as vessel logs, persons on board logs, daily work logs, as well as other similar documentation needed to show what work Alliance employees assigned to Alliance liftboats were doing and when and what the status of the vessels was during those times.[15]

This discovery having been completed, at least partially,[16] Plaintiff brings this present motion, seeking to have a collective defined as follows:

> All individuals employed by Alliance Liftboats, LLC and/or Helix Energy Solutions and crewmembers of the following vessels: L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DALLAS for

---

[10] *Id.* at ¶¶ 6, 29.

[11] *Id.* at ¶¶ 8, 30-32.

[12] R. Doc. 19.

[13] 985 F.3d 430 (5th Cir. 2021); R. Doc. 13.

[14] *Swales*, 985 F.3d at 441.

[15] R. Doc. 13.

[16] Defendant objected to Plaintiff's requests for production of documents as overbroad and irrelevant, and produced only ALLIANCE_000001–002497. R. Doc. 26-1 at pp. 2-3. Attached as Exhibit A to Plaintiff's Motion to Certify Collective Action is a spreadsheet summarizing the documents the Defendant provided. R. Doc. 19-3.

the last three years, whose work did not serve the vessels' operation as a means of transportation, yet were classified as exempt from overtime.[17]

Plaintiff contends he and the putative collective members are similarly situated and the case should proceed as a collective action.[18] Plaintiff did not submit a proposed collective action notice form and, instead, requested twenty-one days to draft and finalize language for the collective action notice form as well as for delivery of notice.[19]

## **LAW**

"The FLSA's baseline requirement is that any employee who works 'longer than forty hours' in a workweek must be compensated 'at a rate not less than one and one-half times the regular rate at which he is employed.'"[20] Under 29 U.S.C. § 216(b), "[a]n action to recover the liability" for an employer's violation of the FLSA's overtime provisions[21] "may be maintained against any employer . . . in any . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." In *Loy v. Rehab Synergies, L.L.C.*, the Fifth Circuit laid out the framework for this Court's § 216(b) analysis of whether employees are similarly situated:

> To decide whether a group of employees is similarly situated, the district court must consider whether merits questions can be answered collectively. After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be similarly situated for purposes of answering the relevant legal questions on the merits. If answering the merits questions requires a highly individualized inquiry into each potential opt-in's circumstances, then the employees are likely not similarly situated. It is the plaintiffs' burden to establish that they are similarly situated.

---

[17] R. Doc. 1 at ¶ 35; R. Doc. 19; R. Doc. 19-1 at pp. 4-5.
[18] R. Doc. 19-1.
[19] *Id.* at p. 20. The Defendant requests 30 days to submit the collective action notice form.
[20] *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 369 (5th Cir. 2021) (quoting 29 U.S.C. § 207(a)(1)).
[21] 29 U.S.C. § 216(b).

Pre-*Swales*, district courts following the *Lusardi* approach considered three factors when deciding whether employees were "similarly situated": (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. While *Swales* rejected *Lusardi*'s two-step method of "conditional certification" and notice followed by a motion to decertify, courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities between *Swales* and *Lusardi*'s second step. That said, use of these factors is not mandatory, as there is no one-size-fits-all analysis or mechanical test to apply: The bottom line is that the district court has broad, litigation-management discretion, cabined by the FLSA's "similarly situated" requirement.[22]

"At the core of the 'similarly situated' inquiry is the question whether the issues in the case can be adjudicated collectively."[23] The Plaintiff has the burden of demonstrating that the employees in the collective class as he defined it are similarly situated.[24] Defendant, as the employer, will have the burden of establishing that the seaman exemption applies by a preponderance of the evidence.[25]

"'Several courts have held that putative class members must show they were affected by a common policy, plan, pattern or practice' to meet the similarly situated requirement."[26] According to those courts, "[t]he key consideration is that to be similarly situated, there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan."[27] "[G]eographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus

---

[22] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329 (5th Cir. 2023) (cleaned up).
[23] *Hill v. Muscogee Cnty. Sch. Dist.*, No. 03-60, 2005 WL 3526669, at *3 (M.D. Ga. Dec. 20, 2005).
[24] *Loy*, 71 F.4th at 337.
[25] *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020).
[26] *Loy v. Rehab Synergies, LLC*, No. 18-4, 2021 WL 3931926, at *8 (S.D. Tex. Sept. 2, 2021) (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535-36 (S.D. Tex. 2008)).
[27] *Caballero v. Kelly Servs., Inc.*, No. 14-1828, 2015 WL 12732863, at *3 (S.D. Tex. Oct. 5, 2015) (internal quotations omitted) (quoting *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)).

is on whether the employees were impacted by a common policy."[28] Other courts disagree and find that the presence of a common policy or plan is not a requirement but is good evidence that employees are similarly situated.[29] In either event, the presence of a common policy or practice is helpful in assessing the first factor mentioned in *Swales*, the putative class members' factual and employment settings.[30]

While it is best practice for an employer to maintain a written policy and to enforce that written policy,[31] a written policy's existence is not dispositive of a court's similarly situated analysis.[32] For example, an employer may have a written policy in place that is compliant with the law, but countervailing evidence may show that the employer does not follow this policy. In such a case, the fact that the employer maintained a written policy would not prevent a court from finding that a group of employees is similarly situated if there is countervailing evidence that the employer violates its policy in a manner that leads to FLSA liability.[33]

Likewise, the absence of a written policy does not necessarily show that the employer does not enforce an unwritten policy against its employees that violates the

---

[28] *Loy*, 2021 WL 3931926, at *8 (quoting *Vargas v. Richardson Trident Co.*, No. 09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010)).

[29] *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149 (S. D. Tex. Dec. 11, 2008).

[30] *Falcon*, 580 F. Supp. 2d at 535.

[31] Alan Bush & Lee Winkelman, *Off-the-Clock Overtime Pay Class Lawsuits: It Only Takes One (Disgruntled Ex-Employee)*, 35 CORP. COUNS. REV. 133, 147 (2016) (discussing how an overtime pay policy should be written and what an overtime pay policy should include).

[32] *Richardson v. Wells Fargo Bank, N.A.*, No. 11-738, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012) (citation omitted) (citing *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 935 (N.D. Ill. 2008)) ("Although written policies are not dispositive that an actual plan or practice exists, written policies are relevant considerations when assessing workers' arguments about the existence of a company-wide policy."); *Russell*, 575 F. Supp. 2d at 935 (citing B*urch v. Quest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007)) ("[T]he mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime.").

[33] *See Richardson*, 2012 WL 334038, at *4 (citing *Russell*, 575 F. Supp. 2d at 935); *Russell*, 575 F. Supp. 2d at 935 (citing B*urch*, 500 F. Supp. 2d at 1188).

FLSA.[34] For example, in an FLSA collective action case, an employer may argue that it does not have a policy that commonly applies to its employees because it has no written policy. However, if the evidence reveals that the employer adheres to an unwritten policy, and that unwritten policy violates the employees' rights under the FLSA, then a court should certify the proposed collective action because the employees are subject to a common policy.[35]

The fact that members of the putative collective class work in different facilities or have different job titles does not preclude a finding that they are similarly situated. "Therefore, even when potential members' work settings differ, this circumstance will not weigh against a finding of sufficient similarity unless liability turns on those differences.[36] Similarly situated plaintiffs need not be identical. In *Torres v. Chambers Protective Services, Inc.*, the United States District Court for the Northern District of Texas held the fact that the employees "have different supervisors, work on different teams, have some varying job duties, and work in different locations" did not prevent a finding that they were similarly situated.[37] The court reasoned "these differences are separate from the alleged unlawful practice—failure to pay overtime wages"—because "none of these differences diminish [the plaintiff's] evidence" of the alleged unlawful practice.[38] Similarly, in *Loy v. Rehab Synergies, LLC*, the United States District Court for the Southern District of Texas held the fact that the purported collective action members

---

[34] *Richardson*, 2012 WL 334038, at *4 (citing *Russell*, 575 F. Supp. 2d at 935); *Russell*, 575 F. Supp. 2d at 935 (citing B*urch*, 500 F. Supp. 2d at 1188).

[35] *Richardson*, 2012 WL 334038, at *4 (citing *Russell*, 575 F. Supp. 2d at 935); *Russell*, 575 F. Supp. 2d at 935 (citing B*urch*, 500 F. Supp. 2d at 1188); *Caballero*, 2015 WL 12732863, at *3 (quoting *McKnight*, 756 F. Supp. 2d at 801); *Loy*, 2021 WL 3931926, at *8.

[36] *Spillers v. Louisiana PHS, LLC,* 2022 WL 1675950 (W.D. La. May 10, 2022).

[37] *See, e.g.*, *Torres*, 2021 WL 3419705, at *6; *Loy*, 2021 WL 3931926, at *11.

[38] *Torres, 2021 WL 3419705 at * 4.

6

"'worked in five different job titles, reporting to different managers at different facilities at different times within the last six years;' worked different schedules; [and] had different 'productivity requirements'" did not preclude a finding that they were similarly situated because these differences were "not material to the merits questions in this case."[39]

The defendant's assertion of defenses that are inapplicable to the entire collective and vary from employee to employee does not prevent a finding that the members of the class are similarly situated.[40] Instead, the Court must consider whether the defenses are so individualized that collective adjudication is unworkable.[41] Such defenses can be adequately raised at a trial involving representative testimony. Representative testimony is particularly worthwhile in cases in which the defendant has inadequate record keeping, such as in this case.[42] "When a defendant in a suit for lost wages under the FLSA fails to maintain employment records as required by the Act, an employee (or the Secretary on behalf of a group of employees: may 'submit sufficient evidence from which violation of the Act and the amount of an award may be reasonably inferred.'"[43] "[S]tanding alone, the prospect of individual defenses should not defeat authorization of a collective action."[44]

---

[39] *Loy*, 2021 WL 3931926, at *11 (footnote and quotations omitted).
[40] *See Valdery-Hughes v. Care & Dev. Ctr., Inc.*, No. 24-1708, 2025 WL 1068258, at *6 (E.D. La. Apr. 9, 2025).
[41] *See Falcon*, 580 F. Supp. 2d at 540-41.
[42] *Reich v. Southern New Engeland Telecom.*, 121 F.3d 58, 66-67 (2nd Cir. 1997).
[43] *Id.*
[44] *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 484 (E.D.N.Y. 2001) (citing *Hyman v. First Union Corp.*, 982 F. Supp. 1, 5 (D.D.C. 1997)).

Fairness and procedural concerns favor certification of a collective action if certification would promote "the FLSA's objectives with regard to collective actions."[45] The FLSA's objectives include "lowering the costs of plaintiffs through aggregation and consolidating common issues of law and fact arising from the same alleged activity."[46] "[P]laintiffs can 'hardly be expected to pursue . . . small claims individually . . . . "[47] Collective actions enable similarly situated plaintiffs to pursue their small claims together and at a lower cost.[48] Additionally, judicial economy favors certification of a collective action if the putative collective's members have similar claims because collective adjudication avoids duplicative trials.[49] Courts should also consider that the "FLSA is a remedial statute that has been construed liberally to apply to the furthest reaches consistent with congressional direction."[50]

## ANALYSIS

### I. The putative collective members are subject to a uniform policy or practice classifying them as FLSA-exempt seaman not entitled to overtime pay.

To meet his burden of establishing that the members of the proposed collective action are similarly situated, Plaintiff points to Defendant's alleged policy of classifying all of its liftboat employees on all nine of its liftboats as FLSA-exempt seaman rendering a service that was primarily an aid in the operation of such vessel as a means of

---

[45] *Ebbs v. Orleans Par. Sch. Bd.*, No. 04-1198, 2014 WL 12717703, at *4 (E.D. La. Mar. 31, 2014) (citing *Johnson v. TGF Precision Haircutters, Inc.*, No. 03-3641, 2005 WL 1994286, at *7 (S.D. Tex. Aug. 17, 2005)).

[46] *Id.* (citing *Johnson*, 2005 WL 1994286, at *7).

[47] *Falcon*, 580 F. Supp. 2d at 541 (first citing *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1351 (N.D. Ga. 2002); then *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1363 (S.D. Fla. 2007)).

[48] *Id.* (first citing *Bradford*, 184 F. Supp. 2d at 1351; then *Pendlebury*, 518 F. Supp. 2d at 1363).

[49] *Id.* (first citing *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); then *Prickett*, 349 F.3d at 1296.

[50] *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1296 (11th Cir. 2003) (internal quotations omitted) (quoting *Johnston v. Spacefone Corp.*, 706 F.2d 1178, 1182 (11th Cir. 1983)).

8

transportation, without regard to whether they performed a substantial amount of work of a different character.[51] A seaman does not lose seaman status, for FLSA purposes, because he performs some work not connected with the operation of the vessel as a means of transportation. Such differing work is substantial if it occupies more 20 percent of the time worked by the employee during a workweek.[52] Plaintiff submits that Defendant "assumed its crewmembers were FLSA-exempt" and accordingly "issued a blanket policy not to pay overtime."[53] Plaintiff claims the proposed collective is comprised of "similarly situated" individuals "because [Defendant] treated [the proposed collective] as exempt seamen without reference to the Department of Labor regulations, and without reference to *Adams v. All Coast*, [*L.L.C.*] or *Wallin* [*v. W. D. Haden Co.*], or the Code of Federal Regulations."[54]

In opposition, Defendant argues Plaintiff has not carried his burden of showing that the proposed collective is comprised of similarly situated individuals because Plaintiff has not come forward with evidence of a blanket policy.[55] Instead, Defendant argues Plaintiff relies on an "absence of evidence" to substantiate his claim.[56] Defendant further argues Plaintiff has not produced sufficient evidence of (1) how his experience as a cook is comparable to the other jobs listed in the proposed collective definition, or (2) how his experience aboard the L/B MIAMI is representative of Defendant's other liftboats listed in the proposed collective definition.[57] With respect to the individuals who would

---

[51] R. Doc. 19-1 at p. 5. *See* 29 C.F.R. § 783.31 which provides criteria for employment "as a seaman" under the FLSA.
[52] 29 C.F.R. . § 783.37.
[53] R. Doc. 19-1 at p. 18.
[54] *Id*. (first citing *Adams*, 15 F.4th 365; then *Walling v. W. D. Haden Co.*, 153 F.2d 196 (5th Cir. 1946)).
[55] R. Doc. 23 at pp. 9-10.
[56] *Id*. at p. 9.
[57] *Id*. at pp. 10-14.

be included in Plaintiff's proposed collective definition, and the various liftboats, Defendant argues the different job titles and the liftboats all are dissimilar.[58]

    As part of the preliminary discovery in this case, the Court specifically authorized discovery as to "the identity of those individuals working on Alliance liftboats, . . . the nature of their work performed, . . . payroll/income records, . . . job descriptions, . . . daily work logs, as well as other similar documentation needed to show what work Alliance employees assigned to Alliance liftboats were doing."[59] Accordingly, Plaintiff served Defendant with a request for production of documents requesting:

    a. The identity of crewmembers on Alliance liftboats, including their job title and job responsibilities;

    b. The job description of any crewmembers;

    c. The actual work performed by crewmembers;

    d. The payment structure – including whether paid by day rate and how much paid – for crewmembers.[60]

Plaintiff requested this information for individuals employed as "crewmembers" on liftboats from April 22, 2021 through the date Plaintiff served his request for production of documents.[61]

    Defendant objected to Plaintiff's requests for production of documents and produced  only ALLIANCE_000001–002497.[62] Specifically, Defendant objected to the request as overbroad and irrelevant,[63] even though this is the discovery the Court had authorized.[64] Defendant represented that, subject to its objections, it would "search for

---

[58] *Id.* at pp. 14-16.
[59] R. Doc. 13.
[60] R. Doc. 26-1 at p. 2.
[61] *Id.*
[62] R. Doc. 26-1 at pp. 2-3.
[63] *Id.* at pp. 2-3.
[64] R. Doc. 13.

and produce, if located, any workflow chart(s), standard employment agreement(s), or job manual(s); employee handbook(s) that tend to show the job description of any crewmembers; the actual work performed by crewmembers; and the payment structure for Defendant's crewmembers."[65] Defendant then stated, "[a]ccordingly, please see ALLIANCE_000001–002497."[66] No party has identified any documents produced subsequent to the Defendant's original answer to the discovery, and the Court assumes there were none.

Although the Court does not have access to the entirety of "ALLIANCE_000001–002497," Defendant did file ALLIANCE_000449–000714 on the record as an exhibit to its motion for summary judgment.[67] This portion of the production is entitled "Standard Operating Procedures."[68] The Court's review of the table of contents for Defendant's Standard Operating Procedures reflects no Standard Operating Procedure on the topic of overtime payment.[69] Neither did the Court find a written policy on overtime payment in its search of the body of the document.[70]

In fact, Defendant has now confirmed that it does not have a written policy regarding payment of overtime.[71] The absence of a written policy does not necessarily show that the employer does not enforce an unwritten policy that violates the FLSA. Defendant admitted its cooks sometimes are not paid overtime for hours worked in excess of forty hours a week.[72] At the oral argument on August 29, 2025, the Court directed

---

[65] R. Doc. 26-1 at p. 3.
[66] *Id.*
[67] R. Doc. 20-4.
[68] *Id.* at p. 1.
[69] R. Doc. 20-4.
[70] *Id.*
[71] R. Doc. 32 at p. 2.
[72] R. Doc. 32 at pp. 2-3. Even if some cooks were sometimes paid overtime, this does not defeat a finding that the putative collective members are similarly situated, given the fact that not all of the cooks were paid overtime for all of the hours they worked in excess of 40. *Falcon*, 580 F. Supp. 2d at 536-37.

Defendant to confirm in its supplemental memorandum whether it pays overtime to any of the following categories of liftboat employees: crane operators, masters, mates, engineers, captains, first mates,[73] qualified members of the engine department ("QMED"), able-bodied Jones Act seaman ("AS"), and ordinary Jones Act seaman ("OS").[74] Rather than directly responding to the Court's directive, the Defendant apparently attempted to clarify its position on pay in its Supplemental Opposition to Motion to Certify saying that "other liftboat employees *could* receive additional pay, identified as 'OT-AIV' on their paystubs, when the customer requests additional services be performed, referred to as 'extended services.' These amounts were paid by the customer. Comparatively, those serving as cooks aboard a liftboat may earn additional pay when they perform work beyond their scheduled work shift." [75] The Defendant explains that "OT-AIV" is "additional pay," and does not represent that it is the same as overtime pay.[76] The Court takes this as confirmation that the Defendant did not pay overtime to any of the categories of liftboat employees listed above. [77]

As part of the preliminary discovery in this case, the Court specifically authorized discovery as to "the identity of those individuals working on Alliance liftboats, . . . the nature of their work performed, . . . payroll/income records, . . . job descriptions, . . . daily work logs, as well as other similar documentation needed to show what work Alliance

---

[73] Defendant confirmed that it employs first mates on its liftboats. R. Doc. 34 at n. 29.

[74] R. Doc. 32.

[75] R. Doc. 34 at n. 13. It is unclear to the Court what the Defendant means by saying the other liftboat employees could receive "additional pay" paid by the customer and cooks may earn "additional pay" when they perform work beyond their scheduled work shift. Does the Defendant pay its liftboat employees overtime wages? The Court concludes it does not.

[76] *Id.*

[77] In its Memorandum in Opposition to Plaintiff's Motion to Certify Collective Action, the Defendant argues that the Plaintiff was paid overtime and is not even a member of the collective he seeks to represent. R. Doc. 23 at p. 2. Subsequent representations by Defendant's counsel at the oral argument on August 29, 2025 and in R. Doc. 34 are contrary to this argument.

employees assigned to Alliance liftboats were doing." Defendant failed to respond to Plaintiff's discovery requests seeking exactly this information but now argues Plaintiff has not produced sufficient evidence of (1) how his experience as a cook is comparable to the other jobs listed in the proposed collective definition, and (2) how his experience aboard the L/B MIAMI is representative of Defendant's other liftboats listed in the proposed collective definition. [78]

Plaintiff highlights the irony of Defendant's argument that Plaintiff has not produced enough evidence of how his work as a cook is comparable to the other jobs listed in the collective definition. Plaintiff points out that Defendant categorized its employees based on their titles – captain, mate, ordinary seaman, able-bodied seaman, cook, QMED and engineer. Plaintiff further argues that, regardless of the title, Defendant paid each of those employees a day rate without overtime; Defendant did not track what portion of each employee's work was spent aiding in navigating the vessel; Defendant performed no calculation to determine whether its liftboat employees were exempt from the FLSA's overtime requirement; and Defendant kept no crane logs, kitchen logs or any other piece of paper that would show what work was being done by which employee to establish that an employee was or was not covered by the seamen's work exception.[79] Instead, Plaintiff argues, Defendant only has logs indicating the personnel on board the vessel, the vessel's location and generally what the vessel was doing that day. Defendant argues the logs show that rarely and briefly do Defendant's liftboats enter navigation: they spend the profound majority of their time (around 65%) jacked, working at a platform; less time (around 20%)

---

[78] Defendant obfuscated rather than answer the discovery authorized by the Court for it to be able to determine whether the members are similarly situated. The Court interprets the Defendant's obfuscation as confirmation that it considered all liftboat employees to be FLSA-exempt seamen not entitled to overtime.

[79] R. Doc. 19-1 at pp. 14-16.

on standby either at the platform or at dock, and less time (around 15%) in navigation or preparing to navigate (including jacking up and jacking down).[80] Although the analysis of similarly situated analysis depends on the character of the work the employee did, not on whether the liftboat was jacked up or not, these logs should prove useful in the analysis of whether the employees were FLSA seamen, particularly when Defendant kept no records that show what work was being done by which employee at what time. "Certainly, [Defendant]'s lack of record keeping is not held against" Plaintiff.[81]

Defendant argues there are differences between the jobs and liftboats listed in the proposed collective definition and that the Plaintiff has "failed to demonstrate that the work he performed as a cook on the L/B MIAMI is representative of the work performed by cooks on any other vessel, let alone every single one of Alliance's seagoing employees."[82] According to the declaration of Jared Chaisson,[83] the Defendant has nine liftboats in its fleet servicing various platforms or rigs in the Gulf, traveling from location to location and transporting cargo between the vessel and other platforms, docks, and vessels. The liftboat may or may not have third-party contractors on board. The liftboats have different manning needs and maximum capacities.[84] The duties of Defendant's licensed mariners (all employees other than deckhands) may change from hitch to hitch depending on the vessel to which they are assigned and the type of vessel to which they

---

[80] R. Doc. 33 at p. 4. In response to the Court's Order directing the Defendant to "verify the veracity of Plaintiff's amended Smooth Log Summary and address any impact of the Smooth Log Summary on the Plaintiff's Motion to Certify Collective," the Defendant did attach a vessel log summary and vessel logs to its Supplemental Opposition to the Motion to Certify. R. Docs. 34-2 and 34-3. Defendant confirmed that the Plaintiff's and Defendant's number are largely the same. R. Doc. 34 at n. 15.

[81] *Spillers v. La. PHS, L.L.C.*, No. 21-00762, 2022 WL 1675950, at *8 (W.D. La. May 10, 2022), *R. & R. adopted*, 2022 WL 1664120 (W.D. La. May 25, 2022).

[82] R. Doc. 23 at p. 2.

[83] R. Doc. 23, Exhibit 2.

[84] *Id.*

are assigned may change.[85] Even taking the Chaisson declaration as true, it is not determinative. The fact that employees have varying job duties and work in different locations does not prevent a finding that they are similarly situated.[86] In *Loy v. Rehab Synergies, L.L.C.*, the Fifth Circuit held the fact that the purported collective action members "'worked in five different job titles, reporting to different managers at different facilities at different times within the last six years;' worked different schedules; [and] had different 'productivity requirements'" did not preclude a finding that they were similarly situated because these differences were "not material to the merits questions in this case."[87] Similarly, none of the differences between the job duties and work locations of the putative collective members in this case, all of whom work on liftboats and none of whom is paid overtime, diminish the evidence of the alleged unlawful practice.[88] To hold otherwise would allow employers to avoid a FLSA collective action because a large number of employees, but working on different liftboats, are affected.

The Court also must consider whether the defendant has available defenses that are individual to each member of the putative collective.[89] Defendant argues its employees who serve as masters, mates, and engineers may be eligible for either the executive exemption or the learned professional exemption and that these defenses are unavailable for other members of the proposed collective.[90] While Defendant may have defenses specific only to masters, mates, and engineers, these job positions are not so

---

[85] *Id.*

[86] *Spillers v. Louisiana PHS, LLC,* 2022 WL 1675950 (W.D. La. May 10, 2022).

[87] *Loy*, 71 F.4th 338.

[88] Defendant relies heavily on the fact that the Plaintiff seeks to certify a collective of employees on all the liftboats operated by the Defendant. R. Doc. 23 at p. 13. The variations noted in the duties of the various liftboats may provide a defense with respect to certain members but do not make certification of the collective impractical.

[89] *Loy*, 71 F.4th at 336.

[90] R. Doc. 23 at pp. 20-21.

individualized as to make certification of a collective impractical. "The Court is not convinced that Defendants' defenses are so individualized that collective adjudication of this claim is unworkable. . . . [T]hese defenses can be adequately raised at a trial involving representative testimony."[91] The Defendant will be free to "present evidence of its purported lawful employment practices, to cross-examine representative plaintiffs, and to call others to the stand with material testimony that helps its case."[92] As a result, the availability of the executive exemption or the learned professional exemption as a defense against masters, mates, and engineers does not make collective adjudication unworkable and does not weigh against certification of the collective.

The Defendant argues that any collective certified should include only cooks because Mr. Breaux is a cook.[93] Murray Dorsay, a cook, also filed a notice of consent to participate in the collective action.[94] Matthew Sims, an ordinary seaman, also filed a notice of consent to participate in the collective action.[95] Mr. Sims was employed in various jobs—crane operator, loading and unloading the vessel, and as a galley hand. Although Defendant suggests that any class certified should be limited to cooks aboard the L/B Miami,[96] Mr. Sims has a more varied employment history. Furthermore, it would be difficult to analyze the status of the cooks on the Defendant's liftboats separately from the other crewmembers because whether a cook is a non-FLSA seaman depends on the

---

[91] *Falcon*, 580 F. Supp. 2d at 540-41.
[92] *Id.*
[93] R. Doc. 23 at pp. 2-3.; R. Doc. 34 at pp. 4-6.
[94] R. Doc. 14.
[95] R. Doc. 15.
[96] R. Doc. 34 at p. 7.

FLSA seaman status of those the cook serves--crewmembers and passengers.[97] A cook for non-FLSA seamen is himself not an FLSA seaman.[98]

The Plaintiff has the burden to establish that putative class members were affected by a common policy, plan, pattern or practice' to meet the similarly situated requirement."[99] There must be substantial allegations that potential members were together the victims of a single decision, policy, or plan.[100] "G]eographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy."[101] The Court finds that Plaintiff has met his burden of showing the members of the collective were subject to a common policy or practice with respect to the payment of overtime wages, namely that all crew members on liftboats were classified as FLSA-exempt seamen and not paid overtime by the Defendant. This existence of a uniform policy weighs heavily in favor of certifying the collective.[102]

In the end, the Court finds the putative members of the collective are similarly situated as there is a common question at issue in this case—whether the putative members of the collective working on liftboats were affected by a common policy or practice classifying all of them as FLSA-exempt seaman rendering a service that was

---

[97] The importance of contractors being on the liftboat is contractors ordinarily do not further the navigational purpose of the vessel and, instead, is often referred to as industrial work.

[98] Adams v. All Coast, LLC, 15 F.4th 365, 376-377 (5th Cir. 2021).

[99] *Loy v. Rehab Synergies, LLC*, No. 18-4, 2021 WL 3931926, at *8 (S.D. Tex. Sept. 2, 2021) (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535-36 (S.D. Tex. 2008)).

[100] *Caballero v. Kelly Servs., Inc.*, No. 14-1828, 2015 WL 12732863, at *3 (S.D. Tex. Oct. 5, 2015) (internal quotations omitted) (quoting *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)).

[101] *Loy*, 2021 WL 3931926, at *8 (quoting *Vargas v. Richardson Trident Co.*, No. 09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010)).

[102] *Hamm v. Acadia Healthcare Co.*, No. 20-1515, 2022 WL 2713532, at *2-3 (E.D. La. July 13, 2022); *Caballero*, 2015 WL 12732863, at *3 (quoting *McKnight*, 756 F. Supp. 2d at 801); *Loy*, 2021 WL 3931926, at *8.

primarily an aid in the operation of such vessel as a means of transportation, without regard to whether they performed a substantial amount of work of a different character.

## II. Fairness and procedural considerations favor certification of the collective.

With respect to fairness and procedural considerations, "a court considers the FLSA's objectives with regard to collective actions, specifically lowering the costs of plaintiffs through aggregation and consolidating common issues of law and fact arising from the same alleged activity."[103] Certification will significantly lower the cost of litigation members of the collective and allow them to have their claims heard in an efficient and cost-effective manner. It is likely many of the members will be unable to pursue their claims individually if the Court denies certification.

Manageability and the number of opt-in plaintiffs are also pertinent to the third factor.[104] On the third factor, Defendant claims Plaintiff "has not demonstrated interest sufficient to justify notice to a putative class."[105] First, Plaintiff has not worked with Alliance since October 24, 2023.[106] In light of this fact, it is unlikely that Plaintiff currently has access to his former co-workers' contact information such that he could gauge interest in this proposed collective action.[107] Second, Plaintiff has filed on the record two "Fair Labor Standards Act Employment Services Consent" forms signed by Alliance employees.[108] These forms demonstrate that at least two Alliance employees other than

---

[103] *Ebbs*, 2014 WL 12717703, at *4 (citing *Johnson*, 2005 WL 1994286, at *7).
[104] *Id.*; *see also Badon v. Berry's Reliable Res., LLC*, No. 19-12317, 2021 WL 933033, at *3 (E.D. La. Mar. 11, 2021) ("Finally, as to fairness and procedural considerations, the Court notes that the collective action now contains only six members in total—a far cry from collective actions containing dozens or hundreds of members, which would present larger procedural concerns.").
[105] R. Doc. 23 at p. 23.
[106] R. Doc. 23-5.
[107] *Hamm*, 2022 WL 2713532, at *4.
[108] R. Doc. 14; R. Doc. 15.

Plaintiff "consent to make a claim against Alliance" for unpaid overtime work.[109] Third, the FLSA defines a collective as comprised of "one or more employees."[110] Plaintiff, and the two other Alliance employees who signed FLSA Services Consent forms, meet this definition of a collective. The Court further notes that fear of retaliation and the relatively small value of individual damages may artificially underestimate the size of the membership of the opt-in FLSA collective action.[111] Considering that two individuals have joined the Plaintiff by filing notices of their intent to participate,[112] and finding that fairness and procedural considerations weigh in favor of certifying the proposed collective action, the Court rejects Defendant's argument as to Plaintiff's failure to show interest sufficient to justify notice.[113] Fairness and procedural concerns justify certification of the proposed collective.

Because the collective members were subject to a single policy, moving forward as a collective action also is in the interest of judicial economy. A collective action will lower the putative collection action members' costs through aggregation, consolidate similar claims, and allow the factfinder to answer the question presented by Plaintiff, whether the putative collective is subject to Defendant's uniform policy or practice of characterizing them as FLSA-exempt seaman in violation of their rights under the FLSA. Although the trial of this action may involve a large number of fact witnesses, the Court believes that a

---

[109] R. Doc. 14; R. Doc. 15.
[110] 29 U.S.C. § 216(b).
[111] *See Leon v. Diversified Concrete, LLC*, No. 15-6301, 2016 WL 6247674, at *5 (E.D. La. Oct. 26, 2016); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) ("It also [may be] reasonably presumed that those potential class members still employed by [the defendant] might be unwilling to sue individually or join a suit for fear of retaliation at their jobs.").
[112] R. Docs. 14, 15.
[113] *Dardar v. Pit Stop Eatery of Houma, LLC*, No. 20-1605, 2021 WL 5513417, at *5 (E.D. La. Mar. 30, 2021); *Hamm*, 2022 WL 2713532, at *4.

single trial is manageable. There is nothing before the Court indicating this case is unmanageable as a collective action.

## III.    The Court will certify the proposed collective action.

"[T]he district court has broad, litigation-management discretion, cabined by the FLSA's 'similarly situated' requirement" in its decision on whether to certify a collective action.[114] The Court finds the proposed collective meets 29 U.S.C. § 216(b)'s similarly situated standard. First, the proposed collective is subject to Defendant's policy of classifying its liftboat employees as FLSA-exempt seaman. Second, the common question of whether the employees are FLSA-exempt seaman may be answered on a class-wide basis. Third, the individualized defenses available to Defendant affect only a subset of the proposed collective and do not prevent the Court, or the jury, from deciding this matter with respect to the entire collective. Fourth, certification of a collective action does not present unmanageability concerns, and will allow for lower costs through aggregation and consolidation of similar claims. Finally, certification will promote judicial economy by avoiding duplicative trials.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that the motion to certify collective action is **GRANTED**.[115] The collective shall be certified with the following definition:

> All individuals employed by Alliance Liftboats, LLC and/or Helix Energy Solutions as crewmembers of the following vessels: L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DALLAS for the

---

[114] *Loy*, 71 F.4th at 337.
[115] R. Doc. 19.

_____[insert time period]_____, who performed a substantial amount of non-seaman work, yet were misclassified as exempt from overtime.[116]

**IT IS FURTHER ORDERED** that counsel for all parties shall meet and confer regarding the notice and consent forms to be used in this action (and the method for delivery of the notice), as well as the applicable time period. On or before November 3, 2025, the parties must either file their agreed upon notice and consent forms or, if there is no agreement, Plaintiff must file his proposed notice and consent forms. Defendant will have an until November 10, 2025 to file any objections to Plaintiff's notice and consent form filed with this Court and/or to file its own proposed notice and consent form.[117]

**New Orleans, Louisiana, this 6th day of October, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[116] The Court has slightly modified the class definition, as it has the right to do. *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149 (S. D. Tex. Dec. 11, 2008).

[117] The Court may at a later date create subclasses or bifurcate liability and damages pursuant to its broad discretion to manage the trial of this case. "The bottom line is that the district court has broad, litigation-management discretion here." *Swales*, 985 F.3d at 441.